**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CARLOS ALBERTO CUENCA
FIGUEREDO,

    Petitioner,

v.                                            Case No. 3:22-cv-1268-TJC-LLL

YAURI DEL CARMEN ROJAS,

    Respondent.

## TEMPORARY RESTRAINING ORDER

This case is before the Court on Petitioner Carlos Alberto Cuenca Figueredo's Ex Parte Motion for Temporary Restraining Order and Motion for Preliminary Injunction. (Doc. 4). On November 15, 2022, Petitioner filed his Verified Petition, Pursuant to the Hague Convention, for Return of Child to the Country of Habitual Residence.[1] (Doc. 1). In the Verified Petition, Petitioner asserts that his minor child, C.R., is being wrongfully retained in Orange Park, Florida, within the Middle District of Florida, by C.R.'s mother (Respondent). See (Doc. 1 at 1–4). Petitioner now asks the Court to enter an ex parte

---

[1] Petitioner filed his Verified Petition pursuant to the Convention on the Civil Aspects of International Child Abduction ("the Hague Convention"), Oct. 25, 1980, T.I.A.S. No. 11670, as implemented by the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001, et seq. ICARA was previously located at 42 U.S.C. § 11601.

temporary restraining order preventing Respondent from removing C.R. from the Court's jurisdiction, requiring Respondent to surrender her and C.R.'s travel documents, and requiring Respondent to provide Petitioner and the Court with C.R.'s whereabouts and current contact information. (Doc. 4 at 14).

## I.   TEMPORARY RESTRAINING ORDER STANDARD

For a court to grant injunctive relief, a movant must show: (1) the movant has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered if the injunction does not issue; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction will cause the opposing party; and (4) that the proposed injunction would not be adverse to the public interest. All Care Nursing Serv. v. Bethesda Memorial Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989); Gross v. Barnett Banks, Inc., 934 F. Supp. 1340, 1347 (M.D. Fla. 1995). It is within the Court's discretion whether to grant injunctive relief. All Care Nursing Serv., 887 F.2d at 1537.

A court may, as Petitioner requests here, issue a temporary restraining order without notice to the adverse party, but only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

2

FED. R. CIV. P. 65(b)(1)(A)–(B). The Court finds that Petitioner has met the requirements for a temporary restraining order.

### A. Petitioner is Likely to Succeed on the Merits of his Hague Convention Claim

The Hague convention

> applies to children under sixteen years of age who are "habitually resident" in a contracting state (Convention, Art. 4) and are "wrongfully removed" to another contracting state (Convention, Art. 1). A child is "wrongfully removed" when (a) the removal "is in breach of rights of custody attributed to a person . . . under the law of the State in which the child was habitually resident," and (b) at the time of removal the rights of custody "were actually exercised" by the person having those rights (Convention, Art. 3). The term "rights of custody" includes "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence" (Convention, Art. 5).

Seaman v. Peterson, 766 F.3d 1252, 1257 (11th Cir. 2014). Thus, Petitioner must ultimately show by a preponderance of the evidence (1) that C.R. was a habitual resident of another country—in this case, Venezuela; (2) C.R.'s removal from Venezuela violated Petitioner's custodial rights, which Petitioner was exercising at the time of C.R.'s removal; and (3) C.R. is less than sixteen years old. See id. Petitioner meets his burden on all three points.

### 1. C.R.'s habitual residence

In the Verified Petition, Petitioner affirms that C.R. was born in Venezuela. (Doc. 1 at 2); (Doc. 1-2 at 10) (English translation of C.R.'s redacted birth certificate). Petitioner states that C.R. has lived in Venezuela for his entire life. (Doc. 1 at 2, 9). "'Habitual residence' is generally defined as 'the place where [the child] has been physically present for an amount of time sufficient for acclimatization and which has a degree of settled purpose from the child's perspective.'" Mendez Lynch v. Mendez Lynch, 220 F. Supp. 2d 1347, 1360 (M.D. Fla. 2002) (quoting Pesin v. Osorio Rodriguez, 77 F. Supp. 2d 1277, 1284 (S.D. Fla. 1999)). Based on Petitioner's representations in the Verified Petition and the supporting record evidence, the Court is satisfied for now that C.R.'s habitual residence, prior to Respondent bringing him to the United States, was Venezuela. See (Doc. 1 at 9); (Doc. 1-2 at 9–10).

### 2. C.R.'s wrongful removal from Venezuela

Petitioner must also show that C.R.'s removal from Venezuela violated Petitioner's custody rights and that he was exercising those rights prior to C.R.'s removal. In his Verified Petition, Petitioner affirms that he and Respondent shared custody of C.R. pursuant to a Venezuelan court order. (Doc. 1 at 10). Respondent initially had custody of C.R., with Petitioner being allowed "liberal visitation." Id. Petitioner and Respondent "later consensually modified that arrangement to provide for their joint custody of [C.R.]" under Venezuelan

4

law. Id. Petitioner argues that Respondent relocating C.R. to the United States, without first informing Petitioner or providing an address, violated his custodial rights. (Doc. 1 at 10); cf. (Doc. 1-3 at 56–65) (Translated Venezuelan court documents indicating that C.R.'s removal from Venezuela violated Petitioner's custodial rights and granting Petitioner full custody of C.R.).

Considering Petitioner's sworn statements in his Verified Petition, the attached Venezuelan court documents indicating that C.R.'s removal violated Petitioner's custodial rights, and the circumstances of Respondent's unilateral relocation to the United States, providing no information for Petitioner to find his son, the Court finds that Petitioner has met his burden. See id.; Uribe v. Luque, No. 8:21-CV-934-SDM-CPT, 2021 WL 3518154, at *3 (M.D. Fla. May 3, 2021) (determining that one parent unilaterally removing a child from Venezuela violates the other parent's custodial rights as a matter of Venezuelan law).

As for whether Petitioner was actually exercising his custodial rights, Petitioner also meets this burden. In his Verified Petition, Petitioner explains that Petitioner had custody of C.R. "during the days" and Respondent had custody "at night." (Doc. 1 at 4–5). From March to November 2020, when Respondent was abroad and unable to return to Venezuela due to Covid-19 restrictions, C.R. "lived solely with [Petitioner.]" Id. at 5. Upon her return in November 2020, Petitioner and Respondent "resumed their joint custody of

[C.R.]" Id. Further, after Respondent relocated C.R. to the United States, Petitioner attempted to continue exercising custody: traveling to the United States to locate and return C.R.; initiating legal proceedings in Venezuela to regain custody of C.R.; and then filing his Verified Petition. Id.; (Doc. 1-3 at 33–65); see Uribe, 2021 WL 3518154, at *3 (finding that regular visits, financial contributions, or pursuing legal custody can constitute actual exercise of custody). Accordingly, the Court finds Petitioner has met his burden to show C.R.'s removal from Venezuela violated Petitioner's custody rights and that he was actually exercising those rights prior to C.R.'s removal.

### 3. C.R.'s age

Finally, Petitioner must show that C.R. is less than sixteen years old. In his Verified Petition, Petitioner states that C.R. is seven years old. (Doc. 1 at 1). Further, Petitioner provides a copy of C.R.'s birth certificate, indicating that he was born in 2015. (Doc. 1-2 at 10). Accordingly, Petitioner has met his burden here.

### B.   Irreparable Injury, Balance of Harms, and the Public Interest

The Court also finds a strong likelihood that Respondent will take C.R. out of this Court's jurisdiction based on Respondent's past conduct in surreptitiously leaving Venezuela and refusing to disclose her whereabouts or provide Petitioner a means to find C.R. See (Doc. 1 at 2). Should Respondent

6

abscond again with C.R., Petitioner may not be able to locate his son, which would perpetuate the ongoing injury. See Stirk v. Lopez, No. 8:20-CV-2894-T-23AAS, 2020 WL 10692527, at *2 (M.D. Fla. Dec. 8, 2020) (finding that a respondent thwarting the purposes of the Hague Convention and ICARA by fleeing a court's jurisdiction constituted irreparable harm) (citations omitted).

Weighing these potential and ongoing harms against any damage the proposed injunction will cause Respondent, the balance lies with Petitioner. Any temporary travel restrictions on Respondent and C.R. until the Court can adjudicate the Petition are far outweighed by the harm Petitioner faces if C.R. is wrongfully relocated again and Petitioner cannot find him. See id. Rather, the requested injunctive relief would simply maintain the status quo while this case proceeds.

Finally, the proposed injunctive relief would not harm the public interest—to the contrary, maintaining the status quo to properly adjudicate this dispute would further the purposes of the Hague Convention and ICARA. Cf. Cunningham v. Cunningham, 237 F. Supp. 3d 1246, 1262 (M.D. Fla.), aff'd, 697 F. App'x 635 (11th Cir. 2017) ("The purpose of the Hague Convention is 'to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access.'") (citation omitted).

7

As this case progresses, Respondent will be given the opportunity to tell her side of the story. However, considering the history of this case, including Respondent's past relocation, her apparent disregard of a Venezuelan court order granting Petitioner custody of C.R., the harm that will occur if Respondent absconds again, and the suitability of maintaining the status quo while this case proceeds, the Court finds that the requested temporary restraining order is warranted.

Accordingly, it is hereby

**ORDERED:**

1. Petitioner's <u>Ex Parte</u> Motion for Temporary Restraining Order and Motion for Preliminary Injunction (Doc. 4) is **GRANTED to the extent set forth below**.

2. Respondent, Yauri Del Carmen Rojas, is hereby **ENJOINED** and **RESTRAINED** from removing or sending C.R. outside the jurisdiction of this Court during the pendency of this case.

3. The United States Marshal shall serve upon Respondent a copy of this Temporary Restraining Order, the Verified Petition (Doc. 1), and all other papers that have been filed in this action. In serving these proceedings, the United States Marshal shall confiscate Respondent and C.R.'s passports, visas, and any other travel related documents for deposit in the registry of the Court.

If the United States Marshal is unable to serve Respondent in accordance with this paragraph, the United States Marshal shall promptly notify the Court.

4. Upon receipt of this Order, Respondent shall inform the Court and Petitioner of C.R.'s current address and a phone number at which C.R. can be reached for the duration of this case. Respondent may contact the Court by calling the chambers of the undersigned at 904-549-1303.

5. Respondent shall not hinder or prevent C.R. from making telephone calls or conducting video conferences with Petitioner during the pendency of this case.

6. Respondent shall not move C.R.'s residence without first obtaining permission from the Court during the pendency of this case.

7. A hearing is hereby **SET** for **December 1, 2022** at **2:00 p.m.** before the undersigned in the United States Courthouse Courtroom 10D, Tenth Floor, 300 North Hogan Street, Jacksonville, Florida. At the hearing, the Court will determine whether the Temporary Restraining Order should be converted to a preliminary injunction. **Respondent must attend the hearing and is encouraged to retain a lawyer to represent her in these proceedings and at the hearing**.

**DONE AND ORDERED** in Jacksonville, Florida the 21st day of November, 2022 at 3:15 p.m.



TIMOTHY J. CORRIGAN
United States District Judge

rmv/ckm
Copies:

United States Marshal

Counsel of record